**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS  DIVISION**

SCOTT AND LAURA BELL,                    )
                                         )
            Plaintiffs,                  )
                                         )
    vs.                                  )          1:07-cv-0936- JDT-WTL
                                         )
                                         )
ANDERSON COMMUNITY SCHOOLS and )
ANDERSON COMMUNITY SCHOOLS     )
BOARD OF TRUSTEES,             )
                                         )
            Defendants.                  )


**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 19)[1]**

        This matter comes before the court on Defendant Anderson Community Schools

and the Anderson Community Schools Board of Trustees' (collectively "ACS's") Motion

for Summary Judgment.  (Doc. No. 19.)  Plaintiffs, Scott and Laura Bell have five

children[2] attending schools in the ACS.  They bring challenges under the United States

Constitution and the Indiana Constitution against what ACS calls a Uniform Dress Code

---

        [1] This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

        [2] The Bells have two daughters residing with them attending ACS and subject to the
Dress Code.  (Lowe Decl. ¶ 20.)  The other three are Scott Bell's daughters from a previous
marriage and also attend ACS, but live with their mother.  (*Id.* ¶ 21.)  The record is unclear as to
what the legal custody arrangement is.  This arrangement may affect the Bells' ability to bring a
case on behalf of their non-custodial children.  *See Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d
1147, 1148-49 (7th Cir. 2001) ("It is doubtful that a non-custodial parent may use the next-friend
device to seize control of the child's educational decision making, when a divorce decree has
given those choices to the custodial parent.").  However, the court need not address this issue
given the outcome of the case.  Additionally, to the extent that the Bells have standing to assert
any claim, they may assert claims related to their two custodial children, even if they cannot do
so for their three non-custodial children.

("Dress Code") that Defendants plan to implement on August 20, 2007, the beginning of

the 2007-08 school year.  The Bells further challenge the Dress Code pursuant to the

Individuals with Disabilities Education Act ("IDEA").  20 U.S.C. § 1400 *et seq.*

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to

interrogatories, affidavits, and other materials demonstrate that there exists "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment,

the court considers those facts that are undisputed and views additional evidence, and

all reasonable inferences drawn therefrom, in the light reasonably most favorable to the

nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195

F.3d 333, 337-38 (7th Cir. 1999).  In order to survive a motion for summary judgment, a

party must "set forth facts showing that there is a genuine issue for trial."  Fed. R. Civ.

P. 56(e).  These facts must be based on admissible evidence.  *Schindler v. Seiler*, 474

F.3d 1008, 1010 (7th Cir. 2007).  Local Rule 56.1(e) explains that the court assumes the

facts presented by the moving party are true, if supported by admissible evidence,

unless they "are specifically controverted" by the non-moving party in their response

brief in compliance with Local Rule 56.1(b), which requires a "Statement of Material

Facts in Dispute."  S.D. Ind. L.R. 56.1.  It is with this standard in mind that the court

presents the following facts.

## II.    FACTS FOR SUMMARY JUDGMENT

Because the Bells did not file a "Statement of Material Facts in Dispute," the

court accepts Defendants' facts as true to the extent they are supported by evidence.

*See* S.D. Ind. L.R. 56.1(e).  In May 2007, the Anderson Community Schools adopted

the Dress Code.  It is to begin effect August 20, 2007, the beginning of the 2007-08

school year.  The Dress Code requires students to wear certain types of clothes without

dictating what brand or the exact articles of clothing the students must buy.  For

example, the Dress Code requires that students wear pants, trousers, capris, skirts,

skorts, or jumpers that are black, navy, or khaki colored, without specifying a particular

brand or style.[3]

Broadly speaking, Plaintiffs, pro se, raise concerns about the cost of such clothes

and the lack of individual expression that the Dress Code allows.  They claim that they

currently have no shoes, pants, shirts, or tops for their children that would satisfy the

Dress Code and will have to purchase a completely new wardrobe for each child.  They

further complain that being able to wear the clothes they want is fundamental to their

children's "freedom of speech, expression, and freedom of happiness."  (Def.'s Ex. TAB

2, at 22.)  In particular, the Plaintiffs assert "wearing such bland colors will promote and

or increase their emotional disorders as well as depression.  Therefore we feel all

children should be allowed to exercise their freedoms as best suited to their individual

---

[3]  The entire dress code is attached to this Entry as an Appendix.

3

personality." (*Id.*)  The legal theories, if any, underlying these broad assertions have been moving targets, as the discussion of the progress of this case will disclose below.

The Bells originally filed their "Petition for Injunction" pro se in Madison County Circuit Court on July 17, 2007 (even though the parameters of the Dress Code were announced publically in May 2007); however, ACS removed the case to United States District Court pursuant to 28 U.S.C. § 1441 the very next day, July 18.  This case required a very tight schedule because school begins on August 20, 2007; therefore, the court ordered a status conference for July 20.  The Bells were still representing themselves pro se at the status conference, as they are now.  At the status conference, the court outlined the schedule the parties were to meet.

The same day, the court issued a short Entry Concerning Conference of July 20, 2007.  (Doc. No. 11.)  In the entry the court summarized the Bells claims gleaned from their complaint and their statements in court.  The most liberal reading possible of the Plaintiffs' assertions suggests that there are two sets of federal law claims—one under the IDEA, 20 U.S.C. § 1400 *et seq.*, and one for violations of the First and Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[4]  Additionally, it appears that there are two

---

[4]  The Bells claim in an email to ACS's counsel responding to the Motion to Bar Testimony and Evidence that their own parental rights are based on the "Nineth (sic) Amendment."  (Def.'s Reply Br. in Support of Their Mot. to Bar Testimony and Certain Evidence Ex. A., at 2.)  The court believes that the Fourteenth Amendment is a better, if not successful, foundation for their claims.  The Ninth Amendment is, currently, an empty vessel.  As one treatise explains:

> Although the Ninth Amendment has not been used as the basis for defining rights of individuals and invalidating either federal or state laws, it has been mentioned as a possible basis for justifying judicial protection of rights not explicitly listed in
> (continued...)

sets of state law claims—one pursuant to Indiana Code § 22-9-1-2, the other pursuant to the Indiana Constitution.

A few days after the status conference, on July 25, 2007, the court issued an Entry Reviewing Potential Issues Presented in this Case.  (Doc. No. 24.)  In it, the court addressed what it considered to be some hurdles to Plaintiffs' successfully obtaining an injunction.  The Entry intended to focus the parties on what appear to the court to be the relevant issues and was aimed, in part, at assisting the pro se Plaintiffs in structuring their arguments and informing them of the evidence they would need to survive a dispositive motion.

Defendants filed this Motion for Summary Judgment on July 30, 2007.  Plaintiffs filed no response by the August 2, 2007, deadline.  On August 6, 2007, they filed a document entitled "Plaintiffs [sic] Objection to Dismissal and Amended Motion for Injunction."  This document in no way complies with Rule 56 of the Federal Rules of Civil Procedure or Local Rule 56.1 to avoid summary judgment, which will be discussed in more detail below.  Throughout the proceedings, Plaintiffs' arguments to the court have been political statements or policy arguments more appropriate for a school board meeting than legal arguments appropriate for a court.  As explained below, their

---

[4](...continued)
the Constitution or other amendments.  References to the amendment in the Supreme Court appear to be only in dicta or in opinions of individual Justices.

Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 15.7 n.10 (3d ed. 1999).  See also Defendants' cogent discussion of the Ninth Amendment in their Response to the Bells' Belated August 6, 2007 Filings ¶¶ 10-11.

unhappiness with ACS's ultimate decision on the Dress Code does not translate into a viable legal claim.

## III.   DISCUSSION

### A.   Jurisdictional Prerequisites and Preliminary Matters

Before reaching the merits of the case, two issues must be discussed.  First, federal courts are courts of limited jurisdiction.  *See* Wright & Miller, 13 Federal Practice & Procedure § 3522.  There are certain prerequisites, known as justiciability, that a party seeking to invoke federal jurisdiction must show before a federal court will reach the merits of a case.  "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so."  *Renne v. Geary*, 501 U.S. 312, 316 (1991).  Some of these prerequisites derive from Article III of the United States Constitution and some derive from self-imposed prudential considerations about the appropriate circumstances for judicial action.  Wright & Miller, 13 Federal Practice & Procedure § 3529.  Even when these concepts are not brought up by the parties, it is the duty of the court to make sure that they are satisfied before moving on to the merits of the case.  *Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842 (7th Cir. 2003) (Article III standing); *United States v. Fischer*, 833 F.2d 647, 648 (7th Cir. 1987) (mootness); *but see MacLauchlan v. Prudential Ins. Co. of Am.*, 970 F.2d 357, 359 n.1 (7th Cir. 1992) (prudential standing requirements may not be addressed sua sponte.  If the claims presented to a federal court were removed from state court but are not proper for adjudication in the federal forum, then the claims must be remanded

6

to state court.  *See Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994).

One category of justiciability, the one relevant to this case, is standing.  There are two branches of standing—Article III standing and prudential standing.  Article III standing "enforces the Constitution's case-or-controversy requirement" by forcing a plaintiff to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004).  On the other hand

> prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."

*Id.* at 12 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Prudential limitations on standing normally prevent one from "rest[ing] his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[5]  But unlike Article III standing, prudential standing "may be bypassed in favor of deciding the merits when the outcome is unaffected and the merits issue is

---

[5]  There are exceptions to this rule.  *See Craig v. Boren*, 429 U.S. 190 (1976) (beer vendor can assert equal protection rights of potential underage male customers); *Singleton v. Wulff*, 428 U.S. 106 (1976) (doctors could maintain action on behalf of potential patients).  But these exceptions are based on two factual elements: "(1) 'the relationship of the litigant to the person whose right he seeks to assert,' and (2) 'the ability of the third party to assert his own right.'" *Indemnified Capital Invs., S.A. v. R. J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1410 (7th Cir. 1993) (quoting *Singleton*, 428 U.S. at 114-16).  These exceptions are irrelevant here because the children are capable of bringing their own claims on the IDEA or the First Amendment.

7

easier than the jurisdictional issue." *McNamara v. City of Chicago*, 138 F.3d 1219, 1222 (7th Cir. 1998).

Second, while a parent may in some situations bring a suit as a representative of a child, Fed. R. Civ. P. 17(c), that does not mean that the parent may represent the child pro se, *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001).  As the United States Court of Appeals for the Second Circuit stated: "It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys.  Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990).  Where parents attempts to litigate pro se on behalf of their children, the court may dismiss those claims without prejudice.  *See id.* at 62; *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Penn.*, 937 F.2d 876, 883 (3d Cir. 1991).[6]

## B.    Federal Constitutional Claims

As noted, it is difficult to pin down exactly what the Bells' constitutional claims are.  Their complaint and filings have been primitive and vague.  In a general sense, they may be characterized in any one of three ways: an attempt (1) to litigate on behalf

_____

[6] In a footnote in its brief, ACS argues that the claim is not yet ripe because the Dress Code has not yet taken effect or been applied to the Bells' children.  But the Dress Code will take effect in a matter of weeks without an injunction issued by the court.  No facts will change between now and then, and the case is ripe for adjudication.  *Cf. Am. Bookersellers Assoc., Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985) ("The district court prevented the ordinance from taking effect. . . . [T]he dispute may be resolved without reference to the administration of the statute.  We gain nothing by waiting.").

of their children to vindicate their children's rights, (2) to vindicate Scott and Laura Bells' injuries caused by ACS's purported violation of their children's rights, or (3) to vindicate Scott and Laura Bells' own rights.  Because the Bells are obviously not trained in the law and are pro se, the court will, through the broadest possible construction of their filings and statement, assume that they bring all three types of claims.

As explained in the preceding section, the Bells, as non-lawyers, may not litigate claims on behalf of their children.  In cases where a parent attempts to litigate claims on behalf of a child, one of three situations may occur: (1) a plaintiff "may decide to secure a lawyer and proceed once again with his children's claims"; (2) a plaintiff "may determine not to pursue the litigation, in which event the children's claims can be dismissed without prejudice"; or (3) "the district court may exercise its discretion pursuant to [28 U.S.C. § 1915(e)(1)] to appoint counsel to represent the children."  *Osei-Afriyie*, 937 F.2d at 883.

Although the court has been asked specifically to appoint counsel, it declines to so pursuant to 28 U.S.C. § 1915(e)(1).[7]  It is within the court's discretion whether to recruit counsel, and "[o]nly when the denial of counsel results in 'fundamental unfairness impinging on due process rights' will a denial of counsel be overturned." *Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir. 1982) (quoting *La Clair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)).  No evidence have been presented that the

---

[7] Technically speaking, courts do not "appoint" counsel in civil cases but "request an attorney to represent" certain litigants "unable to afford counsel."  *See* 28 U.S.C. § 1915(e)(1); *DiAngelo v. Ill. Dept. of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989).

Bells are indigent, and the court believes the claims' chance of success is slim.  *See id.*
(citing *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981).  Further, litigants requesting
that counsel be recruited must show as a threshold matter that they made a reasonable
attempt to secure private counsel.  *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004);
*Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995); *Jackson v. County of McLean*, 953
F.2d 1070, 1072-73 (7th Cir. 1992).  Plaintiffs have not shown any effort to obtain
counsel to litigate their children's claims (claims that provide for attorney's fees to the
prevailing party, *see* 42 U.S.C. § 1988), and they have waited until after they were
notified of the vacation of the preliminary injunction hearing and the expected demise of
their claims to even hint that they wanted the court to find them counsel.  Therefore, the
court **DENIES** Plaintiffs' belated request for counsel.

Since the Bells have yet to secure counsel, the court will treat this as a decision
not to pursue the litigation—after all, they have yet to name their children as
parties—and, to the extent they were ever brought, the constitutional claims of their
children will be **DISMISSED WITHOUT PREJUDICE**.  *Cf. Chueng*, 906 F.2d at 62 (If
father of plaintiff "does not retain counsel and if the district court declines to appoint
counsel, the complaint should be dismissed without prejudice.").

On the second category of claims, the Bells are seeking to redress their injuries
derived from the violation of their children's rights, which, raises concerns about
prudential standing.[8]  If this means that the court lacks subject matter jurisdiction, then it

---

[8] On the other hand, the Bells do have Article III standing.  Without an injunction, they
(continued...)

must remand the case to state court.  *Smith*, 23 F.3d at 1142.  Although a court may

sometimes go directly to the merits of the case rather than tackle an issue of prudential

standing, that is only if the outcome will be unaffected and the merits issue is easier

than the jurisdictional one.  *McNamara*, 138 F.3d at 1222.  Here, the outcome would be

affected; the case would not be remanded if decided on the merits.

ACS claims that the court may address the merits of the case even though the

court might lack subject matter jurisdiction.  This is incorrect.  Jurisdiction is required for

the court to reach the merits of an action.  *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th

Cir. 1999).  ACS cites *Majors v. Abell*, 317 F.3d 719, 725 (7th Cir. 2003) for the

proposition that the court may address the merits.  However, the case stands for no

such principle.  In *Majors*, the court was able to reach the merits not despite standing

and mootness hurdles but because, contrary to the district court's decision, there was

standing, and mootness did not apply.  *Id.* at 723.

If the court were to remand to state court it would present an odd situation, where

a state court could perhaps decide an issue of constitutional law that a federal court

could not.  But as the Seventh Circuit itself noted when remanding a case to a

Wisconsin district court with further orders to remand to Wisconsin state court:

> While some consider it odd that a state court might have the authority to
> hear a federal constitutional claim in a setting where a federal court would

---

[8](...continued)
will have an injury-in-fact.  Namely, they will have to purchase clothing for their children that
conforms with the Dress Code.  This injury is caused by the Dress Code and can be redressed
with an injunction.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

not, see William A. Fletcher, The *"Case or Controversy" Requirement in State Court Adjudication of Federal Questions*, 78 Cal.L.Rev. 263 (1990), it is clear that Article III's "case or controversy" limitations apply only to the federal courts, *ASARCO v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). Perhaps, were the claim remanded to Wisconsin state court, it would there be dismissed on state ripeness or standing grounds. But again, § 1447(c) says that a case removed to federal court "shall be remanded" to the state court if it is discovered that the federal court lacks subject matter jurisdiction. Wisconsin's doctrines of standing and ripeness are the business of the Wisconsin courts, and it is not for us to venture how the case would there be resolved.

*Smith*, 23 F.3d at 1142.

But there are several ways in which prudential standing does not appear to be an outright jurisdictional bar in the Seventh Circuit. For example, an appellate court may not bring up prudential standing sua sponte. *MacLauchlan*, 970 F.2d at 359 n.1. Prudential standing concerns may also be waived. *See United Transp. Union-Ill. Legislative Bd. v. Surface Transp. Bd.*, 183 F.3d 606, 611 (7th Cir. 1999). The court takes ACS's request that the court ignore jurisdictional bars as a waiver of its prudential standing arguments.[9] The court holds that it has subject matter jurisdiction despite prudential standing concerns and will address the merits.

Plaintiffs claim that the Dress Code violates the First Amendment of the United States Constitution. In relevant part, the First Amendment states: "Congress shall pass

---

[9] Because this case was removed from state court by the Defendants, it may seem that the issue of prudential standing is the Plaintiffs' to waive. After all, it was the Defendants who relied on federal jurisdiction to get their preferred forum, not the Plaintiffs, who were content to remain in state court. *Cf. DaimlerChrysler Corp. v. Cuno*, 126 S.Ct. 1854, 1860 (2006) (noting that in district court removed plaintiff argued for remand to state court due to lack of Article III standing). But this distinction is irrelevant because Plaintiffs have not objected to prudential standing either. Suffice it to say neither party seems opposed to the court addressing the merits of the case despite prudential standing concerns.

no law . . . abridging freedom of speech."[10]  The Dress Code does not specifically

address speech.  Instead it is focused on conduct; that is, what students can and cannot

wear.  While the language of the First Amendment speaks of "speech," the amendment

also protects "symbols and conduct that constitute 'symbolic speech.'"  *Littlefield v.*

*Forney Indep. Sch. Dist.*, 268 F.3d 275, 283 (5th Cir. 2001) (citing *Tinker v. Des Moines*

*Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06 (1969)).  While actions, such as wearing

particular items of clothing, may indeed constitute speech in limited circumstances,

> [t]he protections of the First Amendment do not generally apply to conduct
> in and of itself.  To bring a free-speech claim regarding actions rather than
> words, claimants must show that their conduct "conveys a particularized
> message" and "the likelihood [is] great that the message [will] be
> understood by those who view[ ] it."

*Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 388 (6th Cir. 2005) (quoting *Spence*

*v. Washington*, 418 U.S. 405, 411 (1974); *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

In *Blau*—a case recently cited with approval by the Seventh Circuit, *Brandt v. Bd.*

*of Educ.*, 480 F.3d 460, 465 (7th Cir. 2007)—the Sixth Circuit held that the First

Amendment did not protect the student-plaintiff's right to wear whatever clothing she

desired, and the court upheld the dress code of the student's school.[11]  *Blau*, 401 F.3d

at 391.  The court explained that Plaintiff's wardrobe did not convey a particularized

---

[10]  The First Amendment is applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 301 U.S. 296 (1940).

[11]  The dress code at issue in *Blau* was very similar to the one recently enacted by Defendants in this case.  That dress code stipulated that students had to wear, in effect, "crew neck, polo style with buttons, oxford style, or turtleneck" shirts of "a solid color" along with specifically-colored pants.  For the entire contents of the policy in that case, *see Blau*, 401 F.3d at 397 (opinion's "Appendix A" and "Appendix B").

message.  Listing Supreme Court cases finding conduct that conveyed a particularized message, the court wrote: "To say that Amanda Blau's desire to wear clothes she 'feel[s] good in,' as opposed to her desire to express 'any particular message,' fits within this line of cases gives the invocation of precedent a bad name."  *Id.* at 389.  While the Sixth Circuit recognized that self-expression is important and that teenagers and children many times first learn to express themselves through their clothing, it taught "the First Amendment does not protect such vague and attenuated notions of expression—namely, self-expression through any and all clothing that a 12-year old may wish to wear on a given day."  *Id.* at 390.

*Blau* hardly stands alone in upholding school dress codes against First Amendment challenges.  Several other federal courts have also found that school dress codes do not pose a First Amendment problem.  *See, e.g.*, *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001); *Jacobs v. Clark County Sch. Dist.*, 373 F. Supp. 2d 1162, 1180-81 (D. Nev. 2005).  In addition, other cases within the Seventh Circuit have upheld several restrictions on students' clothing, including: (1) a prohibition on wearing "[c]lothing with inappropriate words or slogans," *Brandt*, 480 F.3d at 468, and (2) a prohibition on males wearing earrings.  *Olesen v. School Dist. 228*, 676 F. Supp. 820 (N.D. Ill. 1987).

This court finds the reasoning of the Sixth Circuit in *Blau* to be very persuasive. The Bells have not shown that their children wish to convey any particularized message at all.  They have only hinted that this Dress Code will affect their children's "freedom of expression" and that wearing "such bland colors will promote or increase their emotional

14

disorders as well as depression." But as the Sixth Circuit explained, "the First

Amendment does not protect such vague and attenuated notions of expression . . . ."

*Blau*, 401 F.3d at 390. The Seventh Circuit agrees:

> Self-expression is not to be equated to the expression of ideas or opinions and
> thus to participation in the intellectual marketplace. Nor is the kind of "message"
> that clothing normally sends—"I am rich," "I am sexy," "I have good taste," and so
> forth—intended to contribute to competition in that marketplace.

*Brandt*, 480 F.3d at 465. In fact, the Seventh Circuit, in dicta, approved the *Blau* result.

*See id.* at 466 ("Otherwise . . . schools could not impose dress codes or require

uniforms without violating the free speech of the students, a proposition sensibly

rejected in the *Blau* case."). For this reason, the Bells' First Amendment claims are

**DISMISSED**.[12]

    The only other claims which the court need address on the merits are those of

the Bells' injuries related to their own constitutional rights. The Supreme Court does

recognize, pursuant to the Fourteenth Amendment a "'fundamental right of parents to

make decisions concerning the care, custody and control of their children.'" *Blau*, 401

F.3d at 395 (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). However, this court

agrees with the United States Court of Appeals for the Sixth Circuit that

---

    [12] In their most recent filing, the Bells' stress the financial impact of the dress code and claim a "constitutional right to a 'free education.'" (Pls.' Objection to Dismissal and Am. Mot. for Inj. ¶ 2.) The Supreme Court, however, has recognized no such right, explaining: "Education, or course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 34 (1973).

> [w]hile parents may have a fundamental right to decide whether to send
> their child to a public school, they do not have a fundamental right
> generally to direct how a public school teaches their child.  Whether it is
> the school curriculum, the hours of the school day, [naming other factors],
> or, as here, a dress code, these issues of public education are generally
> "committed to the control of state and local authorities."

*Id.* at 395-96 (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975)); *see also Littlefield v.*

*Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) ("While [p]arents may have

a fundamental right in the upbringing and education of their children, this right does not

cover the [p]arent's objection to a public school Uniform Policy.").  For this reason, the

court **GRANTS** summary judgment to the Defendants on the Bells claims for violations

of their own constitutional rights.

### C.     Individuals with Disabilities Education Act Claims

Plaintiffs also claim they are entitled to relief by the IDEA.  The IDEA was passed

to "'assure that all children with disabilities have available to them . . . a free and

appropriate public education . . . .'"  *Rodiriecus L. v. Waukegan Sch. Dist. No. 60*, 90

F.3d 249, 251 (7th Cir. 1996) (quoting 20 U.S.C. § 1400(c)).  The tool the IDEA creates

to achieve this policy objective is the Individualized Education Program ("IEP").  As the

Seventh Circuit has explained:

> The individualized education program is a written statement prepared by
> the school district after conferences and meetings between the child's
> parents, the child's teacher, and school district representatives, that sets
> forth the child's educational level and performance and establishes annual
> goals and short term instructional objectives.

*Id.* (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)).  The Act provides a host of procedural safeguards available to parents "with respect to the provision of a free appropriate public education."  20 U.S.C. § 1415.  Only after exhausting these procedural safeguards may a party bring a civil action.  20 U.S.C. § 1415(i)(2)(A).  Parents themselves have limited rights pursuant to the IDEA and may, therefore, bring an action on their own behalf and represent themselves pro se.  *Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994, 2002 (2007) ("Petitioners [parents] construe these various provisions [of the IDEA] to accord parents independent, enforceable rights under IDEA.  We agree.").

Plaintiffs contend that their child with Attention Deficit Hyperactivity Disorder and a child with "teen-age depression and explosive anger disorder" are covered under the IDEA.  While children with ADHD can be covered under the IDEA, *see, e.g.*, *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 900 (7th Cir. 1996), the Plaintiffs have not explained if they have gone through the preliminary IDEA steps with their daughters' schools, such as obtaining an evaluation and setting up an IEP.  20 U.S.C. § 1414(a)(1)(A) ("[A state or local educational entity] shall conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability"); 20 U.S.C. § 1414(b) (discussing evaluation procedures, including the content of "the children's individualized education program").

Thus, Defendants argue that Plaintiffs have failed to exhaust their administrative remedies.  Although the court hinted in its previous entry that this raises ripeness concerns (Doc. No. 14, at 4), it is really an affirmative defense.  *See Mosely v. Bd. of*

17

*Educ. of Chi.*, 414 F.3d 527, 533 (7th Cir. 2005).  Plaintiff has presented no evidence to demonstrate a genuine issue of material fact on this issue, and therefore the court **GRANTS** summary judgment to Defendants on Plaintiffs' IDEA claim.[13]

### D.    State Law Claims

The court, having dismissed all of the Plaintiffs' federal claims, must now decide whether to retain jurisdiction over the remaining state law claims or remand them to state court.  *See* 28 U.S.C. § 1367(c)(3).  "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims rather than resolving them on the merits."  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial").

On the other hand, the Seventh Circuit has described three exceptions where a district court should retain jurisdiction.  These are: (1) where the statute of limitations

---

[13]  That is not to say that the court is granting judgment on the children's IDEA claims. Although parent have rights in their own capacity, they may not litigate related claims on behalf of their children pro se, *see Navin*, 270 F.3d 1147, 1148-49 (although father could not litigate on behalf of son, he could litigate his own IDEA claims).  The Supreme Court's holding in *Winkelman* did not change this, *Winkelman*, 127 S.Ct. at 2007 ("In light of our holding, we need not reach petitioners' alternative argument, which concerns whether IDEA entitled parents to litigate their child's claim *pro se*.");  therefore, those claims are **DISMISSED WITHOUT PREJUDICE**.

has run on the state law claim; (2) where "substantial judicial resources have already been committed"; and (3) when it is "absolutely clear" how the state law claims will come out. *Id.* Where these exceptions apply the district court should retain jurisdiction over the pendant state law claims. *See Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722*,* 732 (7th Cir. 2001) (reversing district court judgment dismissing state law claims because "the judicial resources expended by the district court in his case are considerable").

None of these exceptions apply in this case, however, and so the court will remand the claims to state court.  The statute of limitations is not an issue here.  Nor have substantial judicial resources been committed so early in the proceedings.  Finally, although the court's earlier Entry Reviewing Potential Issues expresses doubt that such claims would fare well under Indiana law, it is not absolutely clear how the state law claims will come out.  In the absence of a viable federal law question, the state court system ought to have a chance to make its own determination about how the Indiana Constitution, state statutes, and case law relate to these issues.

## IV.    CONCLUSION

Because there was no potential for Plaintiffs to show any likelihood of prevailing on the merits, the court vacated the earlier scheduled evidentiary hearing.  Further, the Bells' failure to comply with discovery led the court to bar any evidence that had not yet been disclosed (Doc. No. 28), meaning any presentation of evidence by the Bells would have been minimal.  The Bells have claimed that because the hearing was vacated they

did not receive their "day in court."  The Bells were, however, given all of the protections

afforded any litigant in federal court, and, as pro se litigants, their complaint was liberally

read and construed.  It was the Bells who did not comply with the requirements of the

court's scheduling order and Local Rule 56.1(b).  Further, the evidence disclosed would

not have made their claims meritorious.  No Supreme Court or Seventh Circuit

precedent, nor any Rule of Civil Procedure, compels an evidentiary hearing in such

circumstances.  As the Supreme Court has taught:

> we have never suggested that procedural rules in ordinary civil litigation
> should be interpreted so as to excuse mistakes by those who proceed
> without counsel.  As we have noted before, "in the long run, experience
> teaches that strict adherence to the procedural requirements specified by
> the legislature is the best guarantee of evenhanded administration of the
> law."

*McNeil v. United States*, 508 U.S. 106, 113 (1993) (quoting *Mohasco Corp. v. Silver*,

447 U.S. 807, 826 (1980)) (footnote omitted).

The court will **GRANT** summary judgment for the Defendants and against the

Plaintiffs on the claims that it was able to reach on the merits.  These were all of

Plaintiffs' federal claims brought on their own behalf.  The court will **DISMISS WITHOUT**

**PREJUDICE** all claims brought on behalf of their children because Plaintiff, as non-

lawyers, may not represent them.  The court will not exercise its supplemental

jurisdiction over the remaining state law claims and therefore, these claims are

**REMANDED** to state court.  Having not granted relief on the merits on any claim, the

court will **DENY** the request for preliminary injunction.  Costs are **AWARDED** to

Defendants on the federal claims.

Judgment will be entered by separate order.

ALL OF WHICH IS ENTERED this 6th day of August 2007.

_____

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

Rhonda Y. Breman
BOSE MCKINNEY & EVANS, LLP
rbreman@boselaw.com

Judy L. Woods
BOSE MCKINNEY & EVANS, LLP
jwoods@boselaw.com

Scott and Laura Bell
2026 Main Street
Anderson, IN 46016

**Appendix**

Why Adopt a Dress Code?

Anderson Community School Corporation 2007-2008

It's about:

How Students Look
How Students Act
How Students Learn
Respect and discipline
Image and perception

Neat and well-dressed students contribute greatly to the image that a school presents to the public. Students who recognize their responsibility to this situation will lend their cooperation and support to projecting an acceptable image of themselves, to each other and to the community. The school assumes that parents will accept responsibility for having their students appear in an acceptable manner that will contribute to a desirable school image.

Students and parents share the responsibility for making sure that students dress cleanly and neatly at all times and for making sure that students maintain a healthy and respectful appearance while attending school and school activities. Disciplinary action will be taken by administration when students fail to adhere to the school uniform dress code. The best advice is: "When in doubt, rule it out."

The administration reserves the right to determine what is considered inappropriate or disruptive to the educational process.

The administration reserves the right to initiate disciplinary action when in its opinion the student's dress or appearance is responsible for a disturbance, is leading to disruption, or represents a hazard to health or safety. Repeated violations will be treated as insubordination and the student will be subject to disciplinary consequences.

Dress Code
A Class Act
Anderson Community School Corporation
2007-2008

Pants, trousers, capris
Colors: Black, navy, or khaki

 All pants/trousers/capris must be standard fit or relaxed fit, flat-front or pleated with standard waists. No cargo pants, slits, cuts, tears, or frays, (including laced sidings), brand names, slogans, or handwritten messages. Must be worn at the waist level. Size and length must be reasonably appropriate for the student's weight and height. Must be worn as intended by the manufacturer and may not sag below the hips or drag the ground.

Skirts, skorts, or jumpers
Colors: Black, navy, khaki

 Must be knee length or longer.

Tops
Colors: Any solid color

 Shirts must be polo or oxford style or turtle or mock turtle neck. Shirts must have a collar (or turtle or mock turtle neck) and may be long or short sleeved.

Sweaters
Colors: Any solid color

 Crew neck, V -neck or low-cut sweaters must be worn over a n approved shirt. Sweaters must be of a reasonable fit and not hang or bag in such a manner that items may be concealed beneath or within them.

Shoes
Colors: Black, brown, blue, or white

 Shoes may be dress, casual, or (non-cleated) athletic. Shoes must be worn as intended by the manufacturer.

Belts
Colors: Black, brown, blue, or white

 Belts must be worn when garment has belt loops.

23

Socks. tights. leggings
Colors: Solid colors in blue, black, brown, or white.


### Restricted Attire

No logos (except manufacturer's logos on shoes) No flip flops or beach sandals or slippers
No denim of any color
No leggings (unless worn under a skirt or dress), tights, stretch stinup pants No form fitting tops
No halter tops, camisoles, tank tops, tube tops, halter tops, mesh tops, midriff tops, spaghetti strap tops, sleeveless tops
No sweat pants, jogging attire, workout attire, beach wear, swimming attire (except as indicated by curriculum in physical education class)
No pajamas or sleepwear
No hooded jackets, hooded sweaters, hooded shirts No sunglasses
No clothing or other item with offensive, lewd, vulgar, obscene or hate language, slogans or pictures
No buttons, jewelry or other accessories containing lewd, vulgar obscene, hate or offensive messages or pictures or which advocate or advertise the use of drugs or alcohol
No secret society, fraternity, or sorority symbols or lettering
No hair rollers, combs, picks, or cosmetology clamps
No visible undergarments
No clothing altered by cuts, slits or holes or that in any way exposes the skin
No hats, caps, head wraps, bandanas, head scarves worn in the building during the school day
No overall or coveralls No cargo pants
No tight fitting pants or tops
No extremely loose fitting pants or tops
No fangs, detachable gold teeth, grills (unless required by a dentist with written documentation on file)
No studded collars or cuffs
No long chains
No exposed midriffs or cleavage
Anything else the principal or designee deems inappropriate or disruptive to the educational environment will be prohibited.
Exceptions:
NJROTC students may wear their uniforms on designated days as part of their curriculum Students with exceptional physical conditions, diagnosed emotional disorders, and legitimate religious affiliations that require special attire or exception to this code will be provided exemption to the dress code upon official request to and

24

approval by the office of the superintendent. School spirit days may be announced by
the administration.